IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:24-mj-86 |
| | ) | |
| HOLLIDAY ADAMS, | ) | Hon. John F. Anderson |
| | ) | |
| Defendant. | ) | Plea and Sentencing: May 21, 2024 |
| | ) | |

## UNITED STATES' POSITION ON SENTENCING

The United States of America, through undersigned counsel and in accordance with 18 U.S.C. § 3553(a), hereby provides its position with respect to sentencing for Defendant Holliday Adams, who has agreed to plead guilty to one count of disorderly conduct, in violation of 36 C.F.R. § 2.34(a)(4). In exchange, the United States will dismiss the second count: interference with the orderly passage of vehicles, in violation of 36 C.F.R. § 4.2 *adopting* Virginia Code Section 46.2-923. The parties are unable to reach an agreement with respect to sentencing.

For the reasons set forth below, the United States respectfully submits that, in consideration of the § 3553(a) sentencing factors, an appropriate sentence for Defendant Adams is seven days of incarceration and a $250 fine.

## BACKGROUND

On February 13, 2024, at approximately eleven o'clock in the morning, Defendant Adams, codefendant Donald Zepeda, and a third unidentified person staged a protest on the George Washington Memorial Parkway (the "Parkway") near Donaldson Run, which is in the special maritime and territorial jurisdiction of the United States in the Eastern District of Virginia. The three protestors intentionally forced all northbound traffic to a halt for approximately thirty minutes until the U.S. Park Police arrived and arrested two of the three protestors.

The defendants' disorderly conduct on the Parkway was a planned event that was designed to frustrate the public and attract media attention in the hopes of influencing policy change. Prior to the protest, the defendants took an Uber to the drop-off location, which was in the parking area of the Scenic Overlook. There, they congregated with other individuals and a cameraman, who filmed the defendants' obstruction of traffic. The cameraman's video was publicly posted to social media platforms such as Twitter and Instagram.



The still-frame image above, taken from Twitter, a publicly available source, depicts the protestors blocking the sole northbound lane on the Parkway. Due to major reconstruction, the northbound lanes were reduced from two lanes to one by a concrete barrier. The protestors took advantage of the chokepoint created by the barrier, positioning themselves in front of where the barrier ended. By doing so, the protestors prevented vehicles from driving around them. Instead, northbound vehicles were trapped between the concrete barrier on the right, the center median guardrail at the left, and the protestors at the front.

The people in the trapped vehicles were incensed. The woman in the first car yelled and

cursed at the protestors, threw water at them, laid on her car horn, and repeatedly told them to "get the fuck out of my way." She told the protestors that her son was in the hospital, threatened to run them over and at one point got in her car and inched it toward the protestors. A man from a different car ripped away the sign that Defendant Adams and the unidentified protestor were holding and threw it to the side of the road, and then shoved Defendant Zepeda backwards. He also yelled at the protestors to "Move!" and asked why they didn't go down to the White House. At least two other men also got out of their cars, one of whom would have testified at trial that he was on his way to an appointment to buy a Tesla that day and felt frustrated that the protestors were preventing him from where he needed to go for over half an hour.

Approximately thirty minutes later, U.S. Park Police officers arrived at the scene. In speaking with the protestors, Officer Andrew Vovk confirmed that the protestors knew they were not allowed to obstruct traffic and could be arrested for doing so. Officer Vovk would have testified at trial that he gave the protestors several opportunities to move out of the roadway, but all three remained in the road. As a result, police initiated the arrests. After Ms. Adams was in handcuffs, she thanked the U.S. Park Police for coming, and stated: "We really were hoping you would be here soon. We didn't want to obstruct forever . . . We know that this is going to be on the media, and we've done this before and he [President Biden] is fully aware of us, and we just want him to know we're still strong."

At trial, Officer Vovk would have testified that Defendant Adams was wearing a sweatshirt and holding a sign indicating her affiliation with the climate action group "Declare Emergency." A still-frame image from Officer Vovk's body-worn camera is here:



Members of Declare Emergency have carried out several high-profile, non-violent crimes within the past year at the Archives and the National Gallery of Art. The group has a public website (https://www.declareemergency.org) with a Frequently Asked Questions (FAQ) page that answers: "Why does Declare Emergency block roads?" and "Why get arrested and go to jail?" The "jail sacrifice" is identified as an "important strategy" for the group's agenda, as depicted below in its answer to the "Why get arrested and go to jail?" question. Members of the Declare Emergency group are encouraged to get themselves arrested and go to jail as a means of "demonstrate[ing] the importance of [the group's] message." The group relies on arrests to help spread the word about its mission and, in the group's perspective, to highlight the state's oppressive policies.

## Why get arrested and go to jail?

Mass arrest is an important strategy of historical nonviolence movements that demanded system change from their governments.

First, it demonstrates the importance of our message. We do not take our actions lightly. The cause is meaningful to us to the point of jail sacrifice. Our friends and families will hear about it and consider why we took such drastic action.

Second, every time the state imprisons us for nonviolently demanding a livable future, we win a moral battle. The more the state oppresses those asking for the right to live in a sustainable world, the less tenable its moral stance becomes in the eyes of the greater public.

**CRIMINAL HISTORY**

Previously on July 4, 2022, Ms. Adams and at least twelve other individuals from Declare Emergency blocked all lanes and both shoulders of the I-495 inner loop near Colesville Road in Montgomery County, Maryland for a climate demonstration. The police arrested thirteen of the protestors and charged them with two counts: disorderly conduct and disturbing the peace by hindering passage. On September 30, 2022, Ms. Adams and twelve codefendants pleaded guilty in the District Court of Maryland for Montgomery County to one count of disturbing the peace by hindering passage in exchange for dismissal of the remaining charge. The court sentenced her to four days of incarceration.

**LEGAL STANDARD AND ARGUMENT**

The standards governing sentencing are well established. Courts must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient, but not greater than

necessary, to comply with the purposes of sentencing. *See United States v. Booker*, 543 U.S. 220, 259–60 (2005); *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Such factors include consideration of the nature and circumstances of the offense and the history and characteristics of the defendant. See 18 U.S.C. § 3553(a)(1). The sentence imposed should reflect the seriousness of the offense, the need to promote respect for the law, to provide just punishment for the offense, and to afford adequate general and specific deterrence as a means of protecting the public. *Id.* at § 3553(a)(2). The Federal Sentencing Guidelines do not apply in this case because disorderly conduct is a Class B misdemeanor. U.S.S.G. § 1B1.9. Ultimately, the sentence imposed must meet a standard of reasonableness. *See Booker*, 543 U.S. at 260–61.

## I.      Statutory Maximum

Disorderly conduct, in violation of 36 C.F.R. § 2.34(a)(4), carries a maximum possible penalty of six months of imprisonment, a $5,000 fine, and a $10 special assessment. *See* 18 U.S.C. §§ 1865, 3571, 3013.

## II.     Argument

The United States recommends the Court sentence the defendant to seven days of imprisonment and impose a $250 fine. Such a sentence is appropriate in this case as a means of adequately deterring Defendant Adams from committing similar crimes in the future, deterring others from her affiliated group, Declare Emergency, from celebrating and aspiring towards similar arrests, and protecting the public.

The defendant's disorderly conduct seriously endangered the public and warrants a proportionately severe sanction. Defendant Adams' obstruction of traffic created a hazardous condition for the numerous individuals trapped for over thirty minutes without any reasonable option to turn around or otherwise escape. It was hazardous for anyone experiencing a medical emergency that day because emergency vehicles could not use the northbound side of the

6

Parkway to reach people who needed help. Furthermore, the people in the trapped cars could have been experiencing emergencies, or they could have been on their way to visit sick or infirm family members at area hospitals, as the woman in the first car stated she was trying to do.

The defendant's actions also inconvenienced likely hundreds of people. Trapped individuals may have missed appointments, or been late to pick up children, open a shop, or get to a court hearing. They may have arrived home late and exhausted, after working a night shift. The possibilities of the circumstances which the trapped individuals were experiencing are endless, which further underscores the importance of the safe and efficient functioning of our road system. Indeed, a primary function of the U.S. Park Police in the Eastern District of Virginia is to keep traffic moving on the Parkway.

The history and characteristics of Defendant Adams are that she knew she could be arrested for intentionally blocking traffic because she did it once before in Montgomery County, Maryland and it resulted in her arrest and subsequent conviction. She and twelve codefendants each received sentences of four days of incarceration. Yet, Defendant Adams was undeterred. Not even two years hence, she committed the crime to which she is pleading guilty before this Court. Therefore, a greater term of incarceration and imposition of a fine is necessary to deter the defendant.

A sentence of seven days of imprisonment and a $250 fine is also necessary in this case to generally deter others, particularly members of the Declare Emergency group, from intentionally blocking public roadways. As noted above, Defendant Adams' associated group, Declare Emergency, openly champions roadblocks as a primary means of coercing policy change and celebrates arrests as a result. Members and sympathizers of the group are keenly aware of the sentences that courts have imposed on their colleagues. They are calculating the risks and perceived rewards accordingly. For this reason, the need for general deterrence and protection of

public safety warrants a jail sentence and a fine to signal to future protesters that similar disorderly conduct is not taken lightly by the courts and will not be excused with insignificant sanctions.

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests this Court impose a seven-day period of incarceration and a $250 fine. Defendant Adams' decision to participate in yet another roadblock posed a threat to the public safety. Therefore, the recommended sentence is sufficient, but not greater than necessary to achieve the goals of sentencing in view of the defendant's history and characteristics and the nature and circumstances of her violation.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Dated: May 15, 2024

_____/s/_____
Alexis S. Hughes
Special Assistant United States Attorney
Sehar F. Sabir
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3924
Fax:    (703) 299-3980
Email: alexis.hughes2@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2024, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will then send a notification of such filing to all counsel

of record.

_____/s/_____

Alexis S. Hughes
Special Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3924
Fax:     (703) 299-3980
Email: alexis.hughes2@usdoj.gov